JOHNSON v. CHISHOLM et al.

CHISHOLM et al. v. JOHNSON.

(Circuit Court of Appeals, Third Circuit. April 2, 1902.)

Nos. 10, 9.

1. PATENTS—ANTICIPATION—PROCESS FOR HULLING PEAS.

The Chisholm patent, No. 421,244, for a method of hulling peas, is void for anticipation by the process disclosed in the Faure French patent of May 15, 1883, and the first certificate of addition thereto. Gray, Circuit Judge, dissenting.

2. SAME—INVENTION.

The Scott patent, No. 499,397, for a process of gathering and hulling green peas from the vines, claim 2, is void for lack of patentable novelty, in view of the prior art.

3. SAME—PEA-HULLING MACHINE.

The Scott & Chisholm patent, No. 500,299, for a pea-hulling machine, claims 1 to 6, are void for lack of patentable invention, in view of the prior art.

4. SAME.

The Scott patent, No. 387,318, for a machine for hulling and separating green peas, claim 5, construed, and held not infringed.

Appeals from the Circuit Court of the United States for the District of Delaware.

This was a suit in equity for the infringement of four letters patent: No. 421,244, issued February 11, 1890, to Charles P. and John A. Chisholm, for a method of hulling peas; No. 499,397, issued to Robert P. Scott, June 13, 1893, for a process of gathering and hulling green peas from the vines; No. 500,299, issued June 27, 1893, to Scott and the Chisholms, for a pea-hulling machine; and No. 387,318, issued to Scott, August 7, 1888, for a machine for hulling and separating green peas.

For former opinions, see (C. C.) 84 Fed. 384; (C. C.) 106 Fed. 191.

R. S. Taylor, for Zachariah Johnson.

Gustav Bissing and Henry A. Seymour, for Chisholm-Scott Co.

Before ACHESON, DALLAS, and GRAY, Circuit Judges

ACHESON, Circuit Judge. Charles P. Chisholm, John A. Chisholm, and Robert P. Scott brought a suit in equity in the court below against Zachariah Johnson for the infringement of four patents. The decree of the court was in favor of the complainants upon three of the patents. As to the fourth patent, the decree was in favor of the defendant. Both parties have appealed. As the main appeal is that of Zachariah Johnson, we will consider it first, taking up the three patents involved in the order of their dates.

The first of these patents is numbered 421,244, is dated February 11, 1890, was granted to Charles P. Chisholm and John A. Chisholm

115 F.—40

upon an application the original of which was filed January 3, 1887, and is for an improvement in "the method of hulling peas." This patent has two claims, which are as follows:

"(1) The improvement in the art of hulling green peas, which consists in removing the same from the pods by impact, substantially as described. (2) The improvement in the art of hulling green peas, which consists in carrying the filled pods to an elevated position, and impacting the filled pods while falling, so as to sever the connections of the two half shells of the pod and of the peas with the pods at one operation, substantially as described."

The specification of this patent states that by "impact" is meant the striking of a solid body against the pods while the latter are so situated that nothing but the resistance of the air holds them against the action of the solid body, and it is stated that the impact may be given by a "variety of apparatuses." The specification proceeds to state: "For instance, a paddle, beater, or impact opener in the hands of a workman swung with just the proper velocity, impacting the peas while falling through the air, would execute the process." But the patentees in their specification say, "We prefer the apparatus in the accompanying drawings." The machine shown in the drawings consists of an exterior hexagonal drum, A, having upon its interior surface six ribs, B, extending a short distance inwardly. Inside of this is a shaft, E, carrying upon projecting arms four beaters, F. The drum and beaters are exhibited as rotating in the same direction. The drawings show that the unshelled peas, when thrown into the drum, are lodged upon the inwardly projecting ribs, and carried upwardly by the revolving drum. As the ribs approach the top of the cycle of their revolution, the pods fall off toward the interior of the drum, and as they fall they are struck by the revolving beaters. The blows burst the pods, and the peas escape from the drum through perforations therein. The beaters have a spiral inclination with reference to the axis of the drum, and so gradually work the pods from the feed end to the exit end of the drum. After referring to the drawings, the specification contains the following description of the apparatus and its mode of operation:

"In this apparatus the peas are carried to an elevated position in the upper portion of a revolving cylinder, from whence they drop, and while falling through the air they are struck by the beaters, which revolve preferably in the same direction as the cylinder, but at a much greater rate of speed. The cylinder should revolve at just such a speed as not to carry the pods around by centrifugal force, but carry them up and then drop them; and in falling through the air they are struck by the beaters, which may or may not be covered by some soft material (as rubber or leather) to soften the blow. The pods must be struck by a sharp quick blow, which should be just sufficient to crack them open,—that is, to sever the connection of the two half shells of the pod, the connection of the peas with the pods being severed by the same operation. The air naturally confined in the pods protects the peas from being bruised. In the machine which we have shown, and which, by preference, we employ to execute our process, the inside diameter of the cylinder is about thirty-six inches, the length of the cylinder is eight feet, and the length of each beater or impact opener, measured from the geometrical axis of the cylinder, is sixteen inches. With a machine of these dimensions, the revolutions of the cylinder should be about eighteen

per minute, while the beaters should make about one hundred and eighty revolutions in the same time. These dimensions and speeds are given so as to enable a workman to carry out this process without further experiment. They are in no way to be taken as limiting us to any specific dimensions or to the precise speed. Should, however, the speed be increased to five hundred to six hundred revolutions per minute, the principle of operation would be changed, and the peas could not be successfully hulled."

The defenses set up to this patent are: (1) That the patent is invalid: (a) For want of patentability in the subject-matter as a process; (b) for want of novelty. (2) That the defendant does not infringe.

The defendant put in evidence an authenticated copy from the original record of a patent No. 155,471, dated May 15, 1883, granted by the French government to Madame Faure for a machine for hulling green peas, beans, etc., and three certificates of addition thereto, the first of these certificates of addition being dated October 26, 1883, with the drawings therein referred to. There is also in evidence a copy of an article published at Paris, France, on April 11, 1885, in La Nature, describing this Faure machine, and containing a picture of the machine at work, and also a copy of a republication in the United States of the La Nature article and picture in the Scientific American of June 6, 1885. Upon a comparison of the Faure machine, as shown by this evidence, and the machine shown and described in the patent in suit (No. 421,244), the substantial identity of the two machines is obvious. The Faure machine has an outer hexagonal drum supported on rollers. Upon the interior surface of this drum are six inwardly projecting elevating ribs. Mounted upon a central shaft are four beaters, which revolve rapidly, while the outer drum revolves slowly. Both, as shown, revolve in the same direction (although the patent states they may revolve in opposite directions). The drum of the Faure machine is perforated so as to permit the escape of the hulled peas, while by a spiral arrangement of the beaters the pods are gradually worked along from the feed end to the discharge end of the drum. The first certificate of addition (dated October 26, 1883), in describing the operation of the Faure machine, states as follows:

"The beater is moved at a speed of about a hundred and fifty to two hundred revolutions in a minute, or more or less, the speed corresponding with the quality of the peas, while the counter-beater has only a speed of about ten to forty revolutions in a minute, revolving, as will be seen, in the same direction as the beater, or, if necessary, in the opposite direction. The peas, having been put into the hopper, fall in the empty space where the beater moves, and are conducted gradually to the other end, where they escape; but during this time—in consequence of the spiral form given to the beaters—they are crushed and shelled between the beaters and counter-beaters. The counter-beater renews, in revolving continually, the contacts, lifts up the mass, throws it back on the beater and acts in such way that all husks are crushed and emptied without accumulating towards the bottom, and also without the peas being smashed, or even damaged."

In this connection it seems to be appropriate to quote the description of the Faure machine and its operation contained in the above-mentioned article published in La Nature, of Paris, on April

11, 1885, and which, as already stated, contained a picture accurately exhibiting the machine at work, to wit:

"This curious machine, which we have seen with great interest operating at the last agricultural exposition, is composed of a frame having a parallelopipedal form, in which turns a hexagonal drum or counter-beater. This drum, which is surrounded by a cloth of which the meshes have 0.1 mm. of opening, is supported by travelers, and receives its movement of rotation by aid of a pulley. A shaft concentric with this drum carries palettes lightly turned in helical form. The shaft and its palettes turns in the same sense as the drum, but at a much greater velocity. The palettes pass within a small distance of the rods which form the angles of the drum. Below the system which we have described passes an endless apron, which turns constantly. The peas are placed upon the platform of the machine, and fed by hand into the drum by a conduit shown at the top of our engraving. Then they are submitted to the action of the palettes, which produces a kind of threshing. The peas, hulled by this threshing, pass through the cloth and by reason of the helical form of the palettes, the pods continue to advance to the opposite end of the drum, when they fall by a special conduit. The peas not hulled are raised to the upper part of the drum by the rods which form projections into the interior. The pods, thus raised, are struck by the palettes in such a way that the hulling is complete before they have traversed the length of the drum. The hulled peas pass through the cloth, and fall with the débris of the pods upon an endless apron. This débris adheres to the apron, which rejects it at the upper part, and from then into a receiving box. The peas, on the contrary, roll to the lower part into a longitudinal box, where a man may gather them. This box is divided into several compartments to facilitate matters. These compartments are emptied by openings at the lower part. It is easy to understand that by this procedure the peas fall into the box freed from débris and hulls, and in consequence ready to be delivered for consumption. The results obtained with this machine are remarkable, and its performance is important, since it will do about as much work as several hundred women."

It will be remembered that this article and the picture exhibiting the Faure machine at work were reproduced in this country in the Scientific American of June 6, 1885. The drawing accompanying the first certificate of addition to Madame Faure's patent (and here in evidence) is made to a scale, and thereby the actual dimensions of the machine shown and described in and by her patent is readily ascertainable. As we have seen, also, her first certificate of addition mentions working speeds for the beater and counter-beater. From the data thus furnished it is demonstrable (as the expert evidence shows) that the length of each beater in the machine of the Faure patent is 13.1 inches, and that, when rotating at a speed of 200 revolutions per minute (as is stated may be the case), the speed of the outer ends of the beater would be 22.86 feet per second. Now, according to the testimony of Robert P. Scott (one of the complainants), the impacting speed of beaters for the hulling of green peas ranges between 18 feet per second and 35 feet per second, and he names a velocity of "about 24 feet per second" as giving the best results "for the kind of green peas most commonly met with." It is very certain, then, that Madame Faure, in her first certificate of addition, describes a machine capable of operating within the range of impacting speeds required for the successful hulling of green peas. Furthermore, it is equally clear that the pea-hulling machine shown and described by Madame Faure and the machine of this Chisholm

patent (No. 421,244) are substantially identical in form and organization and in mode of operation. It will be perceived that neither of these patents undertakes to fix definite limits as to dimensions or speeds. Madame Faure says: "The beater is moved at a speed of about a hundred and fifty to two hundred revolutions in a minute, or more or less, the speed corresponding to the quality of the peas; while the counter-beater has only a speed of about ten to forty revolutions in a minute." The Chisholms say: "With a machine of these dimensions, the revolutions of the cylinder should be about eighteen per minute, while the beaters should make about one hundred and eighty revolutions in the same time;" but the Chisholms are careful to add that the dimensions and speeds given "are in no way to be taken as limiting us to any specific dimensions or to the precise speed." As to dimensions and speeds, both these patents leave something to the good judgment of the constructor or operator. The directions of each patent are sufficiently certain for practical purposes. No skilled constructor or operator would have any difficulty in carrying out the directions given by either patent so as to attain the best results. It is said it was Madame Faure's conception that her machine would operate by abrasion. Perhaps this was so at the start. But after an experience of several months we find her using the language in her first certificate of addition quite consistent with the idea of shelling by blows or impact. "The peas," she states, "having been put into the hopper, fall in the empty space where the beater moves. * * * They are crushed and shelled between the beaters and counter-beaters." And she significantly adds: "The counter-beater renews, in revolving continually, the contacts, lifts up the mass, throws it back on the beater, and acts in such way that all hushs are crushed and emptied without accumulating toward the bottom, and also without the peas being smashed, or even damaged." This description of the modus operandi and stated result negative an abrading operation. But, after all, it is a matter of no moment that Madame Faure may not have understood the true theory of the operation. Her opinion is not material. The great fact is that she devised and described a machine for hulling green peas capable of operating by impact and incapable of operating (at least to any considerable extent) in any other way. The organization of the Faure machine and the speed of its beaters are such as to render hulling by abrasion practically impossible. In the nature of the case, the operation of the Faure machine is by impact. This is the principle of the apparatus. How clear this is appears when we contemplate the Chisholm machine of patent No. 421,244. The machine of that patent in form, parts, combinations, and organization is the duplicate of Madame Faure's machine. If it be true that the Chisholms have improved on the Faure machine by widening a little the space between the beaters and bars, thus avoiding any possible abrasion, such improvement does not entitle them to monopolize the whole art of hulling green peas by impact, as the patent in suit attempts to do. In view of the French patent to Madame Faure and first certificate of addition thereto, we are of opinion that the claims of the Chisholm patent, No. 421,244,

are invalid for want of novelty; and, having reached this conclusion, we do not think it necessary to consider the other defenses urged against this patent.

The Chisholm patent we have discussed above is designated in this record as the "podder process" patent. The patent to which we now turn, the second in this series, is distinguished in this record by the designation "viner process" patent. This patent is numbered 499,397, is dated June 13, 1893, was granted to Robert P. Scott upon an application filed November 12, 1892, and is for gathering and hulling green peas from the vines. The second claim of this patent was sustained by the court below, and held to be infringed by the defendant. That claim is as follows:

"(2) The process of gathering and hulling green peas consisting in removing the vines from the ground with the green peas attached, subjecting the vines and attached peas while green to impact of the character described and separating the hulled green peas from the refuse."

The machine described in this patent for hulling the peas on the vines is the machine of the podder-process patent (No. 421,244), with such slight modifications as are necessary for the treatment of the larger mass of material. The method pursued in the two instances is the same, the only difference being that in the former case the blows by the beaters are applied to the pods after being stripped from the vines, while in the latter case the blows are given to the pods when still attached to the vines. The two processes, although slightly differing in respect to the form of the material treated, are strictly analogous. The work is done substantially by the same means and with the like result. Now, after the podder process was successfully practiced, the application of impact to the pods while still on the vines was a step naturally taken. The advance did not involve original conception in a patentable sense. Our clear conviction is that the so-called "viner process" of patent No. 499,397 is a case of double use of an old process.

But the claim here in question, we think, also lacks novelty in view of an earlier patent,—No. 399,702, dated March 19, 1889, granted to Robert P. Scott and John A. Chisholm. The machine described in that prior patent consists of an exterior slowly revolving hexagonal drum having elevating ribs and interior "impact openers" or beaters revolving at a high rate of speed. The machine operates by impact upon the pea pods while they are still attached to the vines. The specification thus states one of the objects of the invention, namely, "First, to provide means for hulling green peas from their pods without first removing said pods from the vines, so as to dispense with the time, labor, and expense incident to the old method of first picking the pods from their vines, and then feeding them into the machine for being hulled or opened." And the operation of the apparatus is described in the specification as follows:

"The vines and the peas in the pods attached thereto are fed into the feed end of the separating cylinder, which receives them between its longitudinal bars or ribs and carries them slowly upward until they are caught by the beaters of the more rapidly revolving hulling drum, and carried over the

eages of the curved knives, which cut them into suitable lengths for proper treatment within and passage through said cylinder. The relative speeds of the separating cylinder and the hulling drum are preferably about as fifteen is to one hundred and sixty. The beaters of the rapidly revolving drum strike the pods on the vines with sufficient force to open them and release the peas, which then pass out through the perforations in the covering of the separating cylinder. The beaters, as stated, are adjustable upon the periphery of the drum, so as to assume more or less obliquity or spirality by means of the slotted transverse bar, which, by loosening the set screws, can be turned upon the drum shaft, and thus said beaters made to assume more or less obliquity with respect to the periphery of the hulling drum. It follows from the construction and arrangement of the parts just named that the vines and pods will be fed toward the open discharge end of the separating-cylinder with more or less rapidity, according to the degree of obliquity or spirality that is imparted to said beaters."

Now, it will be noted that this earlier patent (of March 19, 1889) to Scott and Chisholm disclosed the so-called "viner process," and disclosed a machine for practicing it. That machine was operative. It is true, it was improvable, and it soon gave way to a better machine. But, the process itself having been disclosed, and an operative machine for executing it shown, in and by the patent of 1889, it seems clear to us that a valid claim for the process could not be granted to Scott upon an application by him made more than two years afterwards.

Now we pass to the consideration of the third patent here involved, —No. 500,299, dated June 27, 1893, granted to Robert P. Scott, Charles P. Chisholm, and John A. Chisholm, upon an application filed May 2, 1891, for improvements in pea-hulling machines. At the date of this application the art of hulling green peas by machinery was in a forward state. As to apparatus, little, if anything, in the way of invention remained to be done. Besides the pea-hulling machine of Madame Faure, the Chisholm machine of patent No. 421,244, and the Scott-Chisholm machine of patent No. 399,702, belonged to the prior art. As we have heretofore seen, the Chisholm machine was applicable primarily to the podder process, the Scott-Chisholm machine to the viner process. What the general character of the improvements covered by the patent (No. 500,299) now more immediately under consideration were will best appear by quoting the six claims of the patent which the court below sustained and held infringed, namely:

"(1) A machine for hulling green peas from the vines, comprising the combination of an inner revoluble drum provided with beaters and an outer revoluble drum, the latter being opened, thus having an uninterrupted passageway from end to end thereof for the transit of the vines therethrough substantially as described and for the purpose set forth. (2) A machine for hulling green peas from the vines comprising the combination of an inner revoluble drum provided with beaters and an outer revoluble, spokeless, shaftless, and open-ended drum provided with interior longitudinal vine-elevating ribs, substantially as described, and for the purpose set forth. (3) A machine for hulling green peas from the vines, comprising the combination of a revoluble outer drum and an interior revoluble beater carrying drum, the inner drum being prolonged beyond the discharge end of the outer drum substantially as described and for the purpose set forth. (4) A machine for hulling green peas from the vines, comprising the combination of an inner revoluble drum provided with beaters, an outer revoluble,

spokeless, shaftless and open-ended drum, a frame in which the drums are mounted, and a covering upon the framework inclosing the outer drum with the exception of a feed aperture, substantially as described, and for the purpose set forth. (5) A machine for hulling green peas from the vines, comprising the combination of a revoluble outer drum and an inner revoluble beater carrying drum, the inner drum being prolonged beyond the discharge end of the outer drum, a supporting framework, and rollers pivoted on the said framework under each end of the outer drum, substantially as described, and for the purpose set forth. (6) In a machine for hulling and cleaning green peas, the combination of an endless traversing apron, revolving reels supporting the said apron, transverse cleats secured to the said apron and extending from edge to edge thereon, fixed convex-faced guide pieces in general line with the apron on each side thereof and having their convex surfaces toward the respective edges of the said apron, substantially as described, and for the purpose set forth."

These improvements plainly related to mere details of mechanism to better the working of the prior pea-hulling machines. They introduced no new principle of action. No devices in themselves new are disclosed here. At the most, easily perceived remedies were applied to manifest defects. Thus more convenient means for feeding and discharging the mass of vines were provided. An open-ended outer drum and a prolonged inner drum were obvious expedients. They were well-known devices for analogous purposes. All the improvements, changes, and additions here in question were obvious to mere mechanical skill. None of them involved invention in a patentable sense. Upon the proofs we have no hesitation in holding that the above-cited six claims of patent No. 500,299 lack patentable novelty, and are invalid. Aron v. Railroad Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272; Iron Works v. Fraser, 153 U. S. 332, 14 Sup. Ct. 883, 38 L. Ed. 734; American Road Mach. Co. v. Pennock & Sharp Co., 164 U. S. 26, 17 Sup. Ct. 1, 41 L. Ed. 337; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856.

The cross appeal of Charles P. Chisholm, John A. Chisholm, and Robert P. Scott involves only claim 5 of patent numbered 387,318, dated August 7, 1888, granted to Robert P. Scott, upon an application filed November 7, 1887, for "improvement in machines for hulling and separating green peas." The court sustained the claim, but held that it was not infringed by the defendant. The claim is as follows:

"(5) In a machine for hulling and separating green peas, an endless inclined separating apron provided with transverse slats arranged on the inside thereof, in combination with the rollers and the vertical side boards arranged at the sides or edges of said apron and operating to keep the same straight upon said rollers, substantially as described."

The specification describes hinged and overlapping slats, and says:

"These slats, although overlapping at their adjacent ends, serve the same purpose as would solid slats, so far as guiding or keeping the apron straight is concerned; but at the same time, owing to their peculiar construction and arrangement, they will bend out of a straight line, but not sufficiently to prevent their ends from forcibly pushing against the side boards. This bending or hinging action of the slats at their ends also permits the apron to be raised at its sides or edges, so as to roll the peas toward its center, and also it allows said apron to receive a greater vertical throw or toss than

would be incident to the use of solid or unjointed slats running its entire width, since, were the latter used, their solid ends would rest upon the inclined guide flanges of the side boards, and thus prevent the full drop of the apron, and diminish its vibration."

In the machine used by the defendant there are straight transverse slats on the inner side of the apron extending in continuous pieces from edge to edge. They do not overlap, and are not hinged, but solid. Now, if this claim, in view of the prior art, is sustainable at all, it must be construed very narrowly. The specification virtually disclaims solid slats. The court below undoubtedly was right in holding that there was no infringement of this claim by the defendant.

The decree of the circuit court is reversed (except in respect to claim 5 of patent No. 387,318, as to which alone it is affirmed), and the cause is remanded to that court, with direction to enter a decree dismissing the complainants' bill, with costs to the defendant.

GRAY, Circuit Judge. I dissent from so much of the foregoing opinion of the majority of the court as relates to patent No. 421,244, granted to Chisholms, for an improvement in the method of hulling peas, and commonly called the "podder process." I am of opinion that this patent should be sustained as a true invention of a patentable process Its usefulness cannot be disputed, nor do I think its validity is open to attack. A careful examination of the Faure machine convinces me that it cannot be sustained as an anticipation of the invention of the patent here in suit I do not find, either in the original patent of Madame Faure nor in the specification and claims of the first addition thereto, any hint of the method of hulling peas by impact. I admit that the drawings of the Faure machine and the arguments of counsel, make it probable that a large portion of the peas that went through it were hulled by impact, but that is an inference only from an examination of the machine itself. It does not appear in evidence that the thought of hulling by impact had ever occurred to her, and the machine of her patent was built to act in a different way; that was, to hull peas by attrition and abrasion. "One who accomplishes a result by a process which is only partially or not at all understood by him, has invented nothing, and cannot deprive another, who afterwards discovers and proclaims the true principle of the operation, of the right of an inventor." In other respects, I am in accord with the majority of the court.