CHISHOLM et al. v. FLEMING et al.

(Circuit Court, D. Delaware. January 16, 1905.)

No. 248.

1. PATENTS—INFRINGEMENT.

The claims of letters patent No. 421,244, dated February 11, 1890, granted to Charles P. Chisholm and John A. Chisholm for "improvements in the method of hulling peas," sustained, and *held* to have been infringed.

(Syllabus by the Court.)

In Equity.

Gustav Bissing, for complainants.
Robert S. Taylor, for defendants.

BRADFORD, District Judge. The bill in this case charges infringement of letters patent of the United States No. 421,244, dated February 11, 1890, granted to Charles P. Chisholm and John A. Chisholm

for "Improvements in the Method of Hulling Peas." This patent was carefully considered by this court in Chisholm v. Johnson, 106 Fed. 191, and was sustained. The circuit court of appeals, through a majority of its members, reversed this decision, holding that the patent had been anticipated. 115 Fed. 625, 53 C. C. A. 123. The parties in this suit are not the same as those in Chisholm v. Johnson. But this circumstance alone would not, in view of the decision of the appellate court upon the same patent, justify this court, if the proofs were the same in both cases, whatever might be its convictions upon the subject, in entering into the question of the validity or invalidity of the patent. The proofs, however, are not the same in both cases. In this suit are presented not only the proofs adduced in the former case, but evidence of a vital character directly bearing upon the points on which the decree in Chisholm v. Johnson was reversed. The question of the validity of the patent is, therefore, open for determination in this case. The great utility and success of the impacting process of the patent in suit were neither denied nor questioned by the appellate court in Chisholm v. Johnson. It also appears from the opinion that such a "viner" process as is used by the defendants in this suit would infringe the present patent. It is admitted that the "viner" machine complained of in this case was used by the defendants prior to the filing of the bill and was "identical in construction and mode of operation" with that used by the defendant in Chisholm v. Johnson. The court in that case said:

"The machine described in this patent for hulling the peas on the vines is the machine of the podder-process patent (No. 421,244), with such slight modifications as are necessary for the treatment of the larger mass of material. The method pursued in the two instances is the same, the only difference being that in the former case the blows by the beaters are applied to the pods after being stripped from the vines, while in the latter case the blows are given to the pods when still attached to the vines. The two processes, although slightly differing in respect to the form of the material treated, are strictly analogous. The work is done substantially by the same means and with the like result."

The substantial question in the former case so far as it related to the patent now in suit was one of anticipation. Judge Acheson delivering the opinion of the court said:

"In view of the French patent to Madame Faure and first certificate of addition thereto, we are of opinion that the claims of the Chisholm patent, No. 421,244, are invalid for want of novelty."

Judge Gray in his dissenting opinion said:

"I dissent from so much of the foregoing opinion of the majority of the court as relates to patent No. 421,244, granted to Chisholms, for an improvement in the method of hulling peas, and commonly called the 'podder process.' I am of opinion that this patent should be sustained as a true invention of a patentable process. Its usefulness cannot be disputed, nor do I think its validity is open to attack. A careful examination of the Faure machine convinces me that it cannot be sustained as an anticipation of the invention of the patent here in suit. I do not find, either in the original patent to Madame Faure nor in the specification and claims of the first addition thereto, any hint of the method of hulling peas by impact."

In the majority opinion, after reference to certain features in Madame Faure's French patent and the certificates of addition thereto, and to certain phraseology contained therein and in the article in La Nature,

and to the Scientific American of June 6, 1885, supposed to justify an inference that the operation and process of the French patent and its first certificate of addition thereto were distinctively by way of impact and not abrasion, the following statement is made:

"But, after all, it is a matter of no moment that Madame Faure may not have understood the true theory of the operation. Her opinion is not material. The great fact is that she devised and described a machine for hulling green peas capable of operating by impact and incapable of operating (at least to any considerable extent) in any other way. The organization of the Faure machine and the speed of its beaters are such as to render hulling by abrasion practically impossible. In the nature of the case, the operation of the Faure machine is by impact. This is the principle of the apparatus."

The counsel for the defendants says in his brief of argument in this case:

"It is admitted that in her original patent, and in her second addition, Madame Faure described her machine as operating by abrasion; and she does not distinctly state in her first certificate of addition whether it operates by abrasion or impact. But she describes the machine with the utmost nicety. If when built and operated according to her directions, it will of necessity hull peas by impact and not otherwise, then it anticipated the patent in suit; if not, not."

After the decision by the court of appeals of Chisholm v. Johnson certain experiments were made in hulling green peas by the "podder" process as tending to throw light upon the disputed point of "abrasion" or "impact" in the operation of the machine of the first certificate of addition to the patent of Madame Faure; it being admitted that the patent now in suit operates solely by impact. The counsel for the defendants refers to these experiments as follows:

"The complainants claim that their experiments prove that the Faure machine operates mainly by abrasion, and only slightly by impact. The defendants claim that their experiments confirm the theory that the Faure machine operates wholly by impact or with only such small per cent of abrasion as may be neglected."

The experiments above referred to and other proofs in this case, not presented in Chisholm v. Johnson, show, in my judgment, to a moral, if not mathematical, certainty, that, while the machine of the patent in suit operates solely by way of impact, the Faure machine was incapable of hulling green peas by impact except to a comparatively limited extent, and was essentially and distinctively abrasive in its character and operation. There is a general similarity in point of appearance between the Faure machine and the machine of the patent in suit; but with respect to the adjustment and characteristics of the working parts of the two machines, determinative of the nature of the process carried on by them, there are marked and important differences, producing different results. It may be well here briefly to refer to some of these differences. In the machine of the patent in suit, or Chisholm podder, there is a clearance of an inch or more between the tips of the beaters and the faces of the counter-beaters or lifting ribs. In the Faure machine the clearance is only three eights of an inch. By reason of this difference, while green peas can be hulled only by impact in the Chisholm machine, the pods can and necessarily must be abraided in the Faure machine to the extent to which they are caught be-

tween the tips of the beaters and the faces of the counter-beaters. As to the extent of such abrasion more will be said later. In the Faure machine the sides of the counter-beaters are so slanted that the pods taken by any of them from the bottom of the drum cannot be raised to any considerable distance in the drum before sliding to and over the inner face or surface of the counter-beater. In the Chisholm machine the sides of the counter-beaters are not slanted, but parallel. In the Faure machine the inner face of each counter-beater is approximately two inches wide and corrugated. In the Chisholm machine the inner faces of the counter-beaters are much narrower and are not corrugated. In the Faure machine the radial depth of the counter-beaters is three inches. In the Chisholm machine it is from five and a half to six inches. In the Faure machine there are four beaters, each six feet long measured parallel to the axis. In the Chisholm machine there are a large number of beaters, each about twenty inches long. There are six counter-beaters in each of the two machines. In view of the above distinctive features of the Faure machine, what is naturally to be expected if its beaters move at an impacting speed? If the beaters make 200 revolutions a minute, any one of them would pass a fixed point in the drum or cylinder three and one third times in each second; or, in other words, the interval between the passing and repassing of that point by that beater would be considerably less than one third of a second. As there are four beaters in the machine the fixed point would be passed by a beater at intervals of less than one thirteenth of a second. So, if the beaters make 175 revolutions a minute, the fixed point would be passed by a beater at intervals of less than one eleventh of a second. If, however, the inner face of a counter-beater or lifting rib be substituted in lieu of the supposed fixed point, it is evident that, if the beaters and counter-beaters revolve in opposite directions, any given counter-beater will be passed by a beater at even less intervals of time; and, further, that if the beaters and counter-beaters revolve in the same direction any given counter-beater will be passed by a beater at somewhat greater intervals of time. In the translated description of the first certificate of addition it is said that "the counter-beater has only a speed of about ten to forty revolutions in a minute." Assuming that the drum in the Faure machine makes twenty revolutions a minute, while the beaters are revolving at the rate of 200 a minute, the interval of about one thirteenth of a second must be increased to about one twelfth of a second; or, if the beaters revolve at the rate of 175 a minute, the interval of about one eleventh of a second must be increased to about one tenth of a second. These minute fractions of a second may be slightly varied by increasing or diminishing the rate of revolution of the cylinder, within the prescribed limits. If, for instance, the cylinder makes 30 revolutions a minute and the beaters revolve at the rate of 200 a minute, the intervals would be about one eleventh of a second each, or, if the beaters revolve at the rate of 175 a minute, about one ninth of a second each. It is a matter of simple mathematical demonstration, that under the law of gravitation a body falling from a state of rest, without any resistance, atmospheric or of any other kind, will fall in the first one tenth of a second a little less than two inches, or, to be more exact, one and ninety-three one hundredths of an inch.

It thus requires a trifle more than one tenth of a second for a body so to fall a distance of two inches—approximately the width of the corrugated face of the Faure counter-beater. If there be resistance by way of friction, such as would result from sliding across the corrugated face of such a counter-beater, it would require a somewhat longer time to cover the same distance. It is safe to assume that it would take a pea pod at least, and probably more than, the tenth or the ninth of a second to drop or slide fully across the face of the counter-beater. But the tips of the Faure beaters moving at an impacting speed constantly pass each counter-beater at intervals somewhat less than that required for the dropping or sliding of the pod fully across the face of the counter-beater. Under these circumstances it is difficult, if not impossible, to escape the conclusion that in the Faure machine, when run at an impacting speed, there is a practically continuous abrasion of the pods dropping from the edge and face of each counter-beater until it rises slightly above the "nine o'clock position," when such pods as are left will fall away from the face of the counter-beater and may be operated upon by impact. Owing to the slant in the sides of the Faure counter-beaters and their radial narrowness it is apparent that the great mass of the pods lifted by each of them were intended to and will, if the machine be used as designed, slide to and over its inner edge before the ten o'clock position is reached. The comparatively small proportion which may escape abrasion may be impacted in the upper half of the cylinder if sufficient speed be imparted to the beaters. The witness Lyons referring to the machine of the patent in suit says:

"I find that owing to the fact that this machine, in accordance with the Chisholm patent, is fed only lightly, and owing to the fact that the Chisholm lifting ribs are radially longer than the counter beaters of the Faure machine, no pods will drop down from these lifting ribs between the six o'clock and nine o'clock positions; so that, while the drum is moving during this quadrant, no work is done upon the pods in the quadrant between six o'clock and nine o'clock. In this respect the Chisholm machine and its mode of operation is radically different from the Faure machine. The latter does the bulk of its work in the quadrant between the six and nine o'clock positions, by abrasion, while the former does no work at all within this quadrant."

The experiments upon which the complainants rely as showing that the Faure machine operates mainly by way of abrasion in the hulling of green peas were made at Hart, Michigan, in July and August, 1902, and extended over a period of more than a month. The Faure machine of the first certificate of addition was reproduced in exact accordance with its drawings and scale, except in one or more minor particulars immaterial to the present discussion. The drum and all the parts inside of it, including beaters and counter-beaters, were identical in size and shape with those of the Faure drawings. The machine was operated at various speeds, sometimes with the beaters and counter-beaters moving in the same direction, and at other times moving in opposite directions; sometimes with the normal clearness of three eighths of an inch between the tips of the beaters and the counter-beaters, and sometimes with an enlargement of the clearance to one inch, so as to correspond with the clearance of the machine of the patent in suit. Among many others, there were ten sets of experiments.

In each experiment included in the ten sets the machine was run for thirty seconds while the beaters were making 175 revolutions a minute. During the thirty seconds, with the abrading clearance of three eighths of an inch, and with the beaters and counter-beaters moving in the same direction, an average of twenty five per cent of the peas were hulled. On the other hand, during the thirty seconds, with the one inch clearance—representing that of the Chisholm machine in which abrasion is impossible—and with the beaters and counter-beaters moving as before in the same direction, an average of nine and three tenths per cent of the peas were hulled. The difference between the two results represents fifteen and seven tenths per cent of the peas hulled, showing conclusively that while nine and three tenths per cent of the peas were hulled by impact, the remaining fifteen and seven tenths per cent were hulled by abrasion. It is unnecessary to discuss other details of the experiments at Hart. It is enough to say that they all show the essentially and distinctively abrasive character of the Faure machine. To neutralize the effect of the above showing the defendants rely upon certain experiments in hulling green peas made at or near Canastota, New York, January 13, 1903, with the machine of the patent in suit, or "Chisholm podder." There were but two tests made, during each of which the beaters made 180 revolutions a minute. In the first test the machine was used with its normal clearance of an inch or more between the tips of the beaters and the counter-beaters; but in the second the clearance was reduced to three eighths of an inch. The result of the first test was that three per cent of the hulled peas were broken, and seven and one half per cent of the pods passed through the machine without the hulling of their peas. The result of the second was that two per cent of the hulled peas were broken, and five per cent of the pods passed through the machine without hulling. The defendants contend that the Canastota experiments negative the idea that the Faure machine operated mainly or to any considerable extent by abrasion. But such is not the case. They are misleading and merely show that a Chisholm machine with a Faure clearance will operate differently from a Faure machine with a Faure clearance. The narrow clearance is only one of the elements in the Faure machine contributing to abrasion. With it are necessarily associated others, including narrow counter-beaters with slanting sides and comparatively broad and corrugated faces, and beaters about six feet long. These other elements were wholly lacking in the machine used in the Canastota experiments. As there used, the counter-beaters were radially deep, with parallel or non-slanting sides and comparatively narrow and smooth inner faces; and instead of four long beaters there were a large number of small beaters about twenty inches long. The parts of the machine calculated and adapted to raise the pods into the upper half of the drum to a point from which they would, in escaping from the counter-beaters, fall away from their face and down upon the upcoming beaters, thus preventing abrasion to any considerable extent, notwithstanding the presence of the narrow clearance, were identically those and operated as those of the Chisholm machine. If there had been a real intention to show how the Faure machine would operate, a Faure machine would have been used, and resort would not have been

133 F.—59

had to the unnatural expedient of a Chisholm machine with a Faure clearance. The fact that the defendants have wholly failed to produce evidence of experiments with a Faure machine, but have resorted to something else, is, under the circumstances, a virtual admission by them of the contention of the complainants as to the abrasive character of that machine. To sustain the defense of anticipation as against the patent in suit would require strong and convincing evidence. Such evidence does not exist. On the contrary, I am satisfied on the proofs that Madame Faure had no conception of the Chisholm impact; that her machine was designed and understood by her to be and was abrasive in its character; and that its operation in hulling green peas was principally by way of abrasion, whatever may have been the speed of its beaters. That machine did not suggest the process of the patent in suit; nor does the evidence disclose that prior to such patent was there any disclosure of its process by or in any machine, patent or publication. The defense of anticipation must, therefore, fail. Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279; Clough v. Barker, 106 U. S. 166, 175, 176, 1 Sup. Ct. 188, 27 L. Ed. 134; German-American Filter Co. v. Erdrich (C. C.) 98 Fed. 300, 307; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 424, 22 Sup. Ct. 698, 46 L. Ed. 968. Judge Seaman, in Chisholm v. Randolph Canning Co. (C. C.) 135 Fed. 815, has recently sustained the patent in suit, having before him the decision of the court of appeals in Chisholm v. Johnson and also the proofs of the experiments at Hart and Canastota. Among other things he said:

"Proofs are furnished, however, in the present record—which were entirely wanting in the Johnson case—of repeated experiments with a Faure machine, wherein it was practically demonstrated that it was not adapted to perform the patent operation of hulling by impact. While it is true that the resemblance in the general form of the machines is striking, it is obvious from the descriptions given by Madame Faure that she had no conception of the impact method which was discovered by the Chisholms. As it now appears that her device is incapable of its practical performance, I am of opinion that it constitutes no bar to the claims of invention in the Chisholm patent."

For the foregoing reasons I am satisfied that the claims of the patent in suit are valid and have been infringed by the defendants. A decree for the complainants may be prepared in accordance with this opinion.